IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| R80 LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 8:21-cv-01455-PWG |
| Société des Produits Nestlé S.A., et al., | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff R80 LLC ("**Plaintiff**"), a Delaware limited liability company located in Maryland, complains and alleges against Société des Produits Nestlé S.A ("**SPN**"), a Switzerland public limited liability company, Nestle Healthcare Nutrition, Inc. d/b/a Nestlé Health Science ("**NHN**"), a Delaware corporation, and VitaminPacks, Inc. ("**VitaminPacks**"), a Delaware corporation (collectively, "**Defendants**"), as follows.

**NATURE OF ACTION**

1. Plaintiff is the exclusive owner of the incontestable, federally-registered trademark **PersonaDoctors®**, which is the brand name of its innovative physician-designed therapies for weight loss and anti-aging. The PersonaDoctors goods and services have been offered to promote wellness to customers throughout the D.C., Maryland, and Virginia region and beyond for more than seven years, and the mark has come to embody the valuable goodwill and brand recognition therein.[1]

2. Defendants are also in the weight loss and anti-aging market. Instead of adopting their own unique brand, and despite having full knowledge of Plaintiff's senior trademark rights,

[1] Plaintiff's mark is also presented at times as Persona Doctors (i.e., with a space between the words) which is an immaterial difference. However, to the extent Persona Doctors could be considered a separate mark from PersonaDoctors, Plaintiff would still possess common law rights therein from more than seven years of use.

Defendants have chosen to offer their goods and services under the highly confusing mark **Persona**.

3. To make matters worse, Defendants increasingly market their wellness offerings as "doctor-designed", as medical assessments, or otherwise as treatments that doctors customize to individual customers. Such messaging only increases the likelihood that consumers will confuse Persona with PersonaDoctors.

4. To protect its intellectual property rights, to stop Defendants from willfully trading on its valuable goodwill, and to prevent further consumer confusion, Plaintiff brings this action seeking the relief set forth below.

**THE PARTIES**

5. Plaintiff R80 LLC is a limited liability company organized under the laws of Delaware with a principal place of business at 8120 Woodmont Ave, Suite 180, Bethesda, Maryland, 20814.

6. Defendant Société des Produits Nestlé S.A. is a public limited liability company organized under the laws of Switzerland with an address of Avenue Nestlé 55, 1800 Vevey, Switzerland. SPN is the current owner of record for the infringing Persona mark and successor to the business associated with the mark.

7. Defendant Nestle Healthcare Nutrition, Inc. d/b/a Nestlé Health Science is a corporation organized under the laws of Delaware with a principal place of business at 1007 US Highway 202/206, Building JR2, Bridgewater, New Jersey, 08807. NHN uses and licenses the Persona mark, and has facilitated and expanded such use by VitaminPacks.

8. Defendant VitaminPacks, Inc. is a corporation organized under the laws of Delaware with a principal place of business at 35131 SE Douglas St, Suite 105, Snoqualmie, Washington, 98065. VitaminPacks is the former owner of the infringing Persona mark. It now licenses the mark from the mark's current owner SPN and, along with NHN, operates the Persona business in the United

States.[2]

## SUBJECT MATTER JURISDICTION AND VENUE

9. This is an action for federal trademark infringement and unfair competition arising under the federal trademark statute (the "**Lanham Act**"), 15 U.S.C. § 1051 *et seq*., as well as for trademark infringement and unfair competition under the common law of the State of Maryland.

10. This Court has original jurisdiction over the federal claims pursuant to 15 U.S.C. §§ 1114, 1121, & 1125 and 28 U.S.C. §§ 1331 & 1338.

11. This Court has supplemental jurisdiction over the state claim under 28 U.S.C. § 1367(a), because the claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in the U.S. District Court for the District of Maryland under 28 U.S.C. § 1391(b) because: (i) Plaintiff maintains its headquarters in this judicial district; (ii) Defendants' tortious conduct has caused and will continue to cause injury in this judicial district; and/or (iii) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PERSONAL JURISDICTION
## VitaminPacks

13. This Court has personal jurisdiction over Defendant VitaminPacks pursuant to the Maryland long-arm statute because:

(i) VitaminPacks caused tortious injury to Plaintiff resulting from acts in this state, and

[2] VitaminPacks now does business as "Persona Nutrition" or "Persona," which is referred to as a Nestlé Health Science company in Nestlé marketing. *See, e.g.*, *Persona Launches New Gummy Vitamin Packs for the Entire Family* (Apr. 14, 2021), https://www.nestlehealthscience.com/newsroom/press-releases/persona-launches-new-gummy (referring to "Persona™, a Nestlé Health Science (NHSc) company"); LinkedIn, https://www.linkedin.com/company/personanutrition (last visited June 8, 2021) (referring to "Persona, a Nestlé Health Science Company").

transacts business in this state by, *inter alia*:

(a) specifically targeting advertisements to persons in this state using the infringing Persona mark, for the purpose of inducing the sale of goods or services under the mark to persons in this state;

(b) operating an interactive website featuring the infringing mark, which is publicly accessible in Maryland, and offers goods available for purchase by consumers in Maryland under such mark;

(c) operating an interactive website featuring the infringing mark that collects information from consumers in this state, and renders services to them in the form of nutritional counseling, an online health assessment, and information services, all under the infringing mark; and

(d) rendering services under the infringing mark and shipping goods bearing the infringing mark to consumers in this state, both from the above-mentioned interactive website and from Amazon.com.

(ii) VitaminPacks contracts to supply goods, manufactured products, or services to consumers in this state (and throughout the U.S.) under the infringing mark. Specifically, VitaminPacks sells Persona-branded goods and renders Persona-branded services pursuant to Terms of Sale and Terms of Use that purport to create a binding contract with such consumers.[3]

(iii) Either VitaminPacks or NHN transacts business in this judicial district by employing at least three doctors located in this state on the Persona Medical Advisory Board, namely, Dr. Harry Oken and Dr. Barry Lance, each of whom practice in Columbia, Maryland, and Dr.

[3] Ex. A.

Louis Malinow, who practices in Baltimore, Maryland.[4]

(iv) Along with SPN, VitaminPacks filed and prosecuted applications with the U.S. Patent and Trademark Office ("**PTO**") to register the Persona mark, seeking exclusive rights to transact business under the mark in every state including Maryland.

(v) VitaminPacks caused tortious injury both within this state and outside of this state by acts outside of this state, and VitaminPacks regularly does or solicits business in this state, or derives substantial revenue from goods, services, or manufactured products used or consumed in this state.

(vi) VitaminPacks should reasonably expect that its conduct would have consequences in this state, where Plaintiff is located, and it has sufficient minimum contacts with this state through such activities that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

**NHN**

14. This Court has personal jurisdiction over Defendant NHN under the Maryland long-arm statute, because NHN caused tortious injury to Plaintiff resulting from acts in this state, and NHN transacts business in this state, by:

(i) Using the infringing mark in this state, as a licensee of SPN.[5]

(ii) Advertising the Persona goods and services on its website, including through press releases

---

[4] PERSONA NUTRITION, www.personanutrition.com/medical-advisory-board/harry-oken-md.cfm (last visited Oct. 2, 2021) ("...Dr. Harry Oken has a private practice in Columbia, Maryland..."; "*Louis B. Malinow, MD*" MDVIP, https://www.mdvip.com/doctors/louismalinowmd (address of Dr. Malinow's office in Baltimore, MD); www.drbarrylance.com/contact-us/ (last visited Oct. 2, 2021) (address of Dr. Lance's office in Columbia, MD); PERSONA NUTRITION www.personanutrition.com/medical-advisory-board.cfm (last visited Oct. 2, 2021) (showing Drs. Oken, Malinow, and Lance as members of the Persona Medical Advisory Board).

[5] As SPN told the Court, "SPN's licensees and co-Defendants, Nestlé Healthcare Nutrition, Inc. d/b/a Nestlé Health Science ('NHS'), and Vitamin Packs, Inc. ('Vitamin Packs'), use the PERSONA Marks in the United States, including Maryland." Docket Entry ("**DE**") 39 at 2 (footnotes omitted).

that urge consumers who wish to "learn more" about Persona to visit www.nestlehealthscience.com, and refer to "our Persona personalized vitamin business...."[6]

(iii) Using the Persona mark in connection with offering information services, namely, information about vitamins and supplements, on its website.[7] Some of its publications feature the three Maryland-based members of the Persona Medical Advisory Board identified above.[8]

(iv) Working with or controlling VitaminPacks in its conduct described in Paragraph 13, and providing the "platform" for the rapid growth of the Persona business.[9]

(v) Along with SPN, using VitaminPacks as its agent in carrying out the activities under the infringing mark described herein, as more specifically described below.

15. Additionally, either NHN or VitaminPacks transacts business in this state by employing at least three doctors located in this state on the Persona Medical Advisory Board. *See* ¶ 13(iii).

16. The Court also has personal jurisdiction over NHN under Maryland's long-arm statute because NHN caused tortious injury both within this state and outside of this state by acts outside of this state, and NHN regularly does or solicits business in this state, or derives substantial revenue

---

[6] *E.g.*, Exs. B-C, P.

[7] *E.g.*, Ex. C; "The myth of multivitamins," www.nestlehealthscience.com/sites/default/files/2020-10/Infographic%20-%20More%20than%20a%20Multi.pdf (last visited Oct. 2, 2021) (an infographic about multivitamins that urges readers to "Take the Assessment" offered by Persona); "*A good night's sleep is one of the five most important elements to improving health*," (Nov. 10, 2020) www.nestlehealthscience.com/newsroom/press-releases/putting-restful-sleep-in-reach (announcing the release of a "Good Night Guide" by the Persona Medical Advisory Board, with vitamin recommendations); "The Good Night Guide," www.nestlehealthscience.com/sites/default/files/2020-11/SleepGuide%20-%20FINAL%2010%202020.pdf (last visited Oct. 2, 2021) (on the Nestle Health Science website, urging visitors to "Take Persona's FREE assessment at personanutrition.com" and making sleep-related supplement recommendations).

[8] *See, e.g.*, "The Good Night Guide," www.nestlehealthscience.com/sites/default/files/2020-11/SleepGuide%20-%20FINAL%2010%202020.pdf (last visited Oct. 2, 2021).

[9] Ex. B ("Persona" CEO stating: "Making personalized nutrition accessible to help people live healthier and happier lives has always been Persona's main goal. With Nestlé Health Science, we now have a platform to make this a reality on a global scale.").

from goods, services, or manufactured products used or consumed in this state.

17. NHN should reasonably expect that its conduct would have consequences in this state, where Plaintiff is located, and NHN has sufficient minimum contacts with this state through such activities that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

**SPN**

18. This Court has personal jurisdiction over Defendant SPN either (i) under Maryland's long-arm statute or, *in the alternative*, (ii) under Federal Rule of Civil Procedure 4(k)(2), because Plaintiff's Lanham Act claims arise under federal law, SPN is not subject to general jurisdiction in any state, and SPN has sufficient contacts with the United States such that the exercise of jurisdiction is consistent with the U.S. Constitution and U.S. laws. SPN's contacts supporting personal jurisdiction include its own contacts, as well as those of VitaminPacks and NHN that may be imputed to SPN because of the agency relationship it has with the U.S. entities.

19. SPN is the current owner of the infringing Persona mark, and licenses it to VitaminPacks and NHN for use in the U.S. As a trademark owner, it authorizes and controls such use of its mark. As SPN told the Court, "SPN's role with respect to the PERSONA Marks is performing standard trademark-ownership activities" including "exercising quality control" over the use of such marks by licensees. DE 39 at 2. As a trademark licensor, it must approve any significant decisions of its licensees concerning operations under the mark.

20. According to an assignment that SPN recorded with the PTO, SPN is *not only* the current owner of the Persona mark, but it is also the "successor in interest to the portion of the business of [VitaminPacks] associated with" the Persona mark." *See* ¶ 107. The portion of the business associated with the Persona mark is in the United States, and at the time of the assignment it consists of manufacturing and shipping facilities, various employees and staff, including nutritionists, and a

Medical Advisory Board.

21. SPN has owned, since at least as early as July of 2020, the domain name at which the interactive website described above is located, personanutrition.com, and it authorizes the use of the domain, in addition to the Persona mark, for the purposes described above.[10] For purposes of the alternative basis for jurisdiction under Rule 4(k)(2), all allegations concerning such website, including in ¶ 13(i), apply to consumers generally throughout the United States, including but not limited to in the State of Maryland.

22. In the Terms of Use for personanutrition.com, as well as the Terms of Sale for the goods sold there, "Persona" is defined by necessary inference to mean SPN. Such terms thus constitute a contract between consumers and SPN concerning the use of Persona-branded services and the sale of Persona-branded goods to consumers.

(i) The Terms of Use and Terms of Sale purport to form a contract with "Persona," which is not specifically defined. In the section relating to trademarks, the terms read: "'Persona,' the Persona logo, and any other Persona Product or service names, logos or slogans that may appear on the Sites or Products <u>are trademarks of Persona</u> and may not be copied, imitated, or used, in whole or in part, without our prior written permission." Ex. A, ¶ 8 (emphasis added). Given that SPN is the owner of the Persona trademark, by necessary inference the contracting entity "Persona" must be the owner of the marks, or SPN.

(ii) Although terms covering the "Refer a Friend Program" define Persona as "VitaminPacks Inc. DBA Persona," the term is not so defined in the Terms of Sale and Terms of Use. (As further described herein, at other times "Persona" is equated with "Nestle Health Science," rather than VitaminPacks or SPN, so there is no fixed entity typically corresponding to

[10] Ex. D includes an excerpt of a domain history report showing that the ownership of the domain changed from VitaminPacks to SPN between the dates of July 27 and July 29, 2020. Ex. D also includes recent WHOIS information, captured Oct. 2, 2021, showing that SPN still owns the domain.

"Persona").

23. SPN engaged in negotiations with Plaintiff, who is located in this state. SPN's knowledge regarding the Persona marketing practices and intent relating to controlling the future uses of the Persona mark were evident, as SPN represented that the Persona products were *SPN's* products and Persona marketing was *SPN's* marketing, and SPN espoused control over the presentation of the disputed Persona mark, as well as services offered, trade channels utilized, and locations of future brick-and-mortar stores under the mark.

24. SPN contracts to supply goods or manufactured products that are sold under the infringing mark to consumers throughout the United States, including in this state. Specifically, SPN is party to a contract with ChromaDex Inc. ("**ChromaDex**"), an entity that manufactures supplements offered and sold under the infringing Persona mark on personanutrition.com.

(i) ChromaDex entered into an agreement with Nestec Ltd. ("**Nestec**"), a former affiliate of Defendants, effective December 19, 2018, to manufacture supplements containing ChromaDex's proprietary compound.[11] On May 27, 2019, Nestec merged into SPN, and SPN assumed all assets and liabilities of Nestec.[12] SPN thereby succeeded to Nestec's place in the contract with ChromaDex.

(ii) In February 2020, a new health supplement to address anti-aging concerns was launched as a result of that relationship, which is available from personanutrition.com for inclusion in Persona-branded vitamin packs.[13] The supplement is thus a good with which the infringing

[11] Ex. E is a redacted version of this contract filed with the Securities and Exchange Commission ("**SEC**") as part of ChromaDex's Form 10-K.

[12] *See* Exs. F-G (Switzerland government record showing that "Nestec SA" merged into SPN and SPN took over its assets and liabilities. Record supplied both in original French (Ex. F) and in English via Google Translate (Ex. G). "SA" is a translation of "Ltd," so "Nestec SA" and "Nestec Ltd" are the same entity.).

[13] *ChromaDex Partners with Personalized Nutrition Company, Persona Nutrition, Expanding Global Partnership with Nestlé Health Science*, CHROMADEX (Feb. 12, 2020)

mark is used, sold throughout the U.S., including in this state.

25. SPN should reasonably expect that its conduct would have consequences in this state, where Plaintiff is located, and SPN has sufficient minimum contacts with this state such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice, OR, in the alternative, if SPN has insufficient contacts with this state, this Court may exercise personal jurisdiction under Rule 4(k)(2), because SPN does not have contacts sufficient to confer general jurisdiction in any other state. *See* DE 39 at 1 (SPN does not have any "marketing, manufacturing, or sales activities", "is not incorporated in", "has no employees in", "has no headquarters or offices in", "does not have a telephone number in" and "is not licensed to conduct business in" any one U.S. state.).

26. As detailed below (*see* heading "**Defendants' Agency Relationship and Lack of Corporate Formalities**"), Defendants have an agency relationship among them, as shown by their failure to observe corporate formalities and boundaries, and thus the contacts of VitaminPacks and NHN may be imputed to SPN.

## FACTUAL BACKGROUND

### PersonaDoctors

27. Plaintiff provides customized weight loss and anti-aging goods and services under the

---

investors.chromadex.com/news/news-details/2020/ChromaDex-Partners-with-Personalized-Nutrition-Company-Persona-Nutrition-Expanding-Global-Partnership-with-Nestl-Health-Science/default.aspx (ChromaDex press release); Exs. H-I (the supplement, TruNiagen, available for inclusion in Persona vitamin packs, recommended for anti-aging). The ChromaDex press release characterizes the agreement as with "Nestle Health Science," but this is because the underlying agreement with Nestec Ltd. uses "NHSc" as the defined term for Nestec. Since the earliest ChromaDex disclosure concerning this agreement, ChromaDex has referred to Nestec, Ltd. as "Nestle Health Science" in press releases. Ex. J shows a ChromaDex Form 8-K submitted to the SEC shortly after entry into this agreement, which refers to the contracting entity as "Nestec Ltd" in describing the agreement to the SEC, while an accompanying press release refers to the entity as "Nestle Health Science." Thus, ChromaDex has always referred to the contracting entity as "Nestle Health Science," even though it was Nestec Ltd.

PersonaDoctors mark. Its treatments are tailored by doctors to a customer's medical conditions, lifestyle, and goals. They begin with a medical history review and assessment, including testing to screen for hormone imbalances, drug interactions, and nutritional deficiencies. Plaintiff then recommends treatments and products based on the assessment. Its offerings include weight loss medications, ingestible vitamins and supplements, hormone therapy, nutritional counseling, and ongoing medical advice, supervision, and recommendations. Some of Plaintiff's goods and services are considered "bariatric", to the extent they treat obesity.

28. Ingestible vitamins and supplements offered under the PersonaDoctors mark include multivitamins, craving and sugar control aids, and digestive enzymes. These come in tablet or capsule form and are available without a prescription.

29. The PersonaDoctors mark has been in use in connection with the offerings in ¶¶ 27-28 continuously in interstate commerce since at least as early as January 2014, by Plaintiff's predecessors and Plaintiff. Attached as Exhibit K is a brochure distributed in PersonaDoctors clinics from early 2014 describing many of these offerings, including the above-referenced vitamins and supplements.

30. Additionally, the specimen of use submitted in support of the application for the PersonaDoctors trademark, a new patient enrollment form filed publicly with the PTO on March 24, 2014, shows most such goods and services on its face. These include – significantly for this proceeding – "Supplements", "Digestive Enzymes", "Vitamins", "Cravings & Sugar Control Aids," and "Nutritional and Behavioral Counseling."[14]

---

[14] Ex. L. That specimen is accessible from the public records of the PTO prosecution file for the PersonaDoctors mark at this website: https://tsdr.uspto.gov/#caseNumber=86229725&caseType=SERIAL_NO&searchType=statusSearch (select "Documents," then select "Specimen" under "March 24, 2014.").

31. To protect its valuable intellectual property rights and put others on notice of such rights, Plaintiff and its predecessors have maintained a U.S. trademark registration for the PersonaDoctors mark covering the following services –

> Conducting medical physical evaluations; medical services; dispensing of pharmaceuticals; dispensing of pharmaceuticals, namely, injectables; dispensing of medicines, namely, hormone replacement therapies; cosmetic fat reduction procedures, namely, nonsurgical cosmetic body care services; physician services.

32. A true and correct certified copy of the Certificate of Registration from the PTO, with a statement from the PTO identifying Plaintiff as the current owner of the mark, has been filed as DE 1-2.[15]

33. Plaintiff's registered PersonaDoctors mark has achieved incontestability within the meaning of the Lanham Act, 15 U.S.C. § 1065.

34. The item in Plaintiff's registration, "dispensing of pharmaceuticals;" is interpreted by the PTO to encompass dispensing vitamins and supplements. *See* Ex. M, p. 6.[16] But to the extent that Plaintiff's registration were interpreted not to cover these items, or any other goods and services identified above, Plaintiff has common law rights in PersonaDoctors in connection with all such goods and services based on use of the mark dating back to January of 2014.

35. The PersonaDoctors mark is presented to give the impression of two separate words – "Persona" and "Doctors" – either through the use of separate colors, or through the use of a space in presentations that lack color. "Doctors" is also capitalized, in both contexts. The mark, as shown on

---

[15] As instructed by Local Rule 103(6)(b), Plaintiff has not re-filed exhibits that were filed with the original complaint. All such exhibits – DE 1-2, DE 1-3, DE 1-4, DE 1-5, DE 1-6, DE 1-7, and DE 1-8 – are expressly incorporated herein by reference. A current status page from the PTO's Trademark Status & Document Retrieval database reflecting the status of the PersonaDoctors mark is publicly available here: https://tsdr.uspto.gov/#caseNumber=86229725&caseType=SERIAL_NO&searchType=statusSearch and a copy of that page is also filed as DE 1-3.

[16] This Exhibit consists of a relevant excerpt of the final office action explaining the PTO's reasoning for refusing registration of the Persona mark on grounds of a likelihood of confusion with Plaintiff's mark.

Plaintiff's website, medical weight loss products, and a retail location, is depicted below:










36. There are now seven PersonaDoctors locations in Maryland and Virginia, staffed by four physicians as well as other medical professionals. These locations provide in-person services to customers from those states, and routinely serve customers traveling from D.C., West Virginia, Delaware, and Pennsylvania. In addition, Plaintiff ships medications branded with the PersonaDoctors mark to customers in thirty-one states nationwide.[17]

[17] These are: Arizona, Colorado, Connecticut, D.C., Delaware, Florida, Georgia, Hawaii, Illinois, Idaho, Iowa, Kansas, Maine, Maryland, Minnesota, Mississippi, Nevada, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Virginia, Washington, West Virginia, and Wisconsin.

37. Among the factors that draw consumers to the PersonaDoctors service is the involvement of physicians – actual doctors – who meet with customers, tailor therapies, prescribe medications when appropriate, and provide ongoing medical supervision and support.

38. As a result of seven years of high-quality services and satisfied customers, PersonaDoctors has earned a valuable reputation among relevant consumers, and the PersonaDoctors trademark embodies the valuable goodwill and brand recognition in this business.

39. The PersonaDoctors mark is inherently distinctive, as evidenced by its incontestable trademark registration. Moreover, "Persona" is "arbitrary" on the spectrum of distinctiveness as used in connection with Plaintiff's goods and services. The word "Persona" means "the aspect of [a person's] character or nature that they present to other people, perhaps in contrast to their real character or nature." *Persona*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/persona (last visited July 13, 2021). Thus, "Persona" does not suggest or describe Plaintiff's goods or services.

40. The mark has also acquired distinctiveness and commercial strength, in the greater D.C., Maryland, and Virginia region in particular, through substantially exclusive use in commerce for more than seven years, robust marketing and promotional efforts, and numerous customers.

41. Between 2014 and the beginning of 2020, approximately one million dollars per year was invested in marketing that prominently featured the PersonaDoctors trademark, and Plaintiff's investment in marketing remains substantial today. There have been over 38,500 customers for the goods and services under the mark, generating over $68 million in revenue over the past seven years. Accordingly, the PersonaDoctors mark has achieved wide recognition among relevant consumers, thanks to the success of its services, sustained investment in marketing, and positive reviews.

42. Marketing channels for the PersonaDoctors business include television advertising (primarily in D.C., Virginia, and Maryland), Facebook, YouTube, Google Ads, and Plaintiff's

website, www.persona-doctors.com. Plaintiff sells and provides goods and services in-person at its clinics, through its website, over the phone, and through the mail.

43. Plaintiff has nationwide, exclusive trademark rights based on rendering services under the PersonaDoctors mark to customers traveling from multiple states since at least as early as January 2014, from shipping and selling goods bearing the PersonaDoctors mark to an expanding number of U.S. states (currently thirty-one), and by virtue of its federal trademark registration that issued November 11, 2014 with a March 24, 2014 priority date.

44. Plaintiff's expansion plans will soon bring more PersonaDoctors-branded offerings to a broader group of consumers across the country, as it prepares to launch telehealth services later this year. Plaintiff is also exploring opening additional brick and mortar locations in new markets.

**Defendants' Infringing Mark**

45. In 2017, VitaminPacks started a business of providing vitamins to consumers through the mail. In or around August of 2018, it adopted and used the mark **Persona** in connection with this business.

46. Below is an image depicting VitaminPacks' use of the infringing mark on packaging, using a blue-and-white color scheme similar to that used by Plaintiff.[18]

[18] *See* Persona, FACEBOOK (Oct. 21, 2020), https://www.facebook.com/PersonaNutrition/photos/2517424848555547/.




47. In 2018 and 2019, VitaminPacks filed U.S. trademark applications for the Persona mark, both in standard character form and with a design. The applications were limited in scope to its online vitamin business.[19]

48. On August 22, 2019, Nestle Health Science announced that it had acquired VitaminPacks, according to a press release posted on NHN's website.[20]

49. Plaintiff thereafter noticed a change in Persona marketing. The marketing suggested

---

[19] U.S. Trademark Application Serial No. 88/546,510 (filed July 29, 2019), covering: "On-line retail store services featuring vitamins and vitamin products, prenatal vitamins, multi-vitamin preparations, mineral supplements, herbal supplements and nutritional supplements."
U.S. Trademark Application Serial No. 88/546,526 (filed July 29, 2019), covering: "Informational services, namely, providing information about vitamins and nutritional supplements; preparation and dispensing of vitamins and nutritional supplements."
U.S. Trademark Application Serial No. 88/546,356 (filed July 29, 2019), covering: "Herbal supplements; Vitamin preparations; Vitamin supplements; Vitamin tablets; Vitamins; Mineral supplements; Multi-vitamin preparations; Nutritional supplements; Prenatal vitamins."

[20] *Nestlé Health Science Expands into Personalized Nutrition with Acquisition of PersonaTM* (Aug. 22, 2019), https://www.nestlehealthscience.com/newsroom/press-releases/NESTLE-HEALTH-SCIENCE-EXPANDS-INTO-PERSONALIZED-NUTRITION-WITH-ACQUISITION-OF-PERSONA (last visited Oct. 2, 2021). According to the press release, the Persona business was directly acquired by Atrium Innovations, a wholly-owned subsidiary of "Nestle Health Science." Atrium Innovations is a wholly-owned subsidary of NHN, so this press release implies that the "Nestle Health Science" acquiring "Persona" (i.e., VitaminPacks) was NHN.

that medical consultations or medical advice was offered under the Persona mark, and that doctors customized vitamin and supplement combinations to each customer. It touted "doctor-approved recommendations" that would be available to users who took a personal health assessment online.[21]

50. The personanutrition.com homepage had not initially included such language. Attached hereto as Exhibit N is a copy of the homepage of personanutrition.com as captured circa August 2018. There are no references to "doctors," "weight loss" or "bariatric" offerings there.

51. Alarmed by the new developments, Plaintiff submitted Letters of Protest to the PTO flagging the potential for consumer confusion between Plaintiff's registered PersonaDoctors mark and the applied-for Persona mark.

52. Plaintiff also wrote to VitaminPacks, expressing its concerns that VitaminPacks was marketing medical evaluations and medical and nutritional advice under the Persona mark. These services directly overlapped with the PersonaDoctors' offerings. Plaintiff questioned the truthfulness of the messaging that doctors or other medical professionals customized the Persona vitamin packs to each individual.

53. VitaminPacks responded to Plaintiff's letter on June 3, 2020. It denied that it offered any medical advice or services, and it disagreed that its marketing implied that it did so. It explained that doctors helped to develop an algorithm that identified potential drug interactions with vitamins and supplements. A statement like "doctor-approved recommendations," according to VitaminPacks, "refers generally to health information that PERSONA's website offers, not to each customer's vitamin recommendation." *See* Ex. O (the "**June 2020 letter**" or "**VP Ltr**.").[22] Based on these explicit representations, Plaintiff was led to believe that VitaminPacks did not actually offer

---

[21] Filed as DE 1-5 is a screenshot reflecting the above statements from VitaminPacks' website captured on or around April 30, 2020.

[22] This letter is included only to show what VitaminPacks said, and not because Plaintiff incorporates, approves, or alleges the truth of any of the statements therein.

customized advice or recommendations from doctors.

54. VitaminPacks made several other representations in its June 2020 letter concerning supposed differences or distinctions that mitigated any likelihood of confusion between the parties' marks. However, as discussed below (*see* heading "**Defendants' Bad Faith Intent**"), Defendants then actively bridged the very differences and obscured the very distinctions that VitaminPacks had highlighted.

55. At the time of receiving the June 2020 letter, Plaintiff was unpersuaded by the differences and distinctions highlighted by VitaminPacks, but it decided to see if the PTO would act on its Letters of Protest and provide further support for Plaintiff's claims of likely confusion.

56. Between June and September of 2020, the PTO indeed issued office actions acting on Plaintiff's Letters of Protest. It refused registration to three Persona trademark applications for which Plaintiff had submitted such a letter, based on a likelihood of confusion with Plaintiff's mark.

57. Either in June, October, or possibly November of 2020, SPN became the owner of the Persona mark. (The ambiguity is due to Defendants' own failures to maintain corporate formalities and separate records – *see* ¶¶ 102-106.).

58. Thus, SPN, already the ultimate parent company of VitaminPacks, became the owner of the Persona mark. It also was the purported successor to the business associated with the Persona mark.

59. SPN then licensed the mark to VitaminPacks and to NHN, and both have continued to use the Persona mark in the United States.

60. During the fall of 2020, Defendants argued to the PTO that there was no likelihood of confusion between the Persona mark and the PersonaDoctors mark. The PTO was unpersuaded, and on February 10, 2021 it issued new office actions making the refusals final.

61. Specifically, the PTO refused registration of applications for the Persona mark,

including with the "fingerprint" logo, in connection with the following goods and services:

- Herbal supplements; Vitamin preparations; Vitamin supplements; Vitamin tablets; Vitamins; Mineral supplements; Multi-vitamin preparations; Nutritional supplements; Prenatal vitamins. U.S. Trademark Application Serial No. 88/546,356 (filed July 29, 2019);

- On-line retail store services featuring vitamins and vitamin products, prenatal vitamins, multi-vitamin preparations, mineral supplements, herbal supplements and nutritional supplements. U.S. Trademark Application Serial No. 88/546,510 (filed July 29, 2019); and

- Informational services, namely, providing information about vitamins and nutritional supplements; preparation and dispensing of vitamins and nutritional supplements. U.S. Trademark Application Serial No. 88/546,526 (filed July 29, 2019).

62. The PTO examining attorney found that consumers are likely to be confused by the similarity of the parties' marks, even with the "fingerprint" design element, and that the above-identified goods and services were sufficiently overlapping with and related to the services in Plaintiff's registered mark that consumers would believe that they emanated from the same source. The examining attorney rejected Defendants' argument, similar to that advanced by VitaminPacks in its June 2020 letter to Plaintiff, that the presence of third-party marks incorporating the element "Persona" in the marketplace obviated the likelihood of confusion.[23]

63. Even as the PTO issued these office actions, Defendants were taking steps that would increase the likelihood of confusion. They did so in three ways.

64. *First*, Defendants were growing and amplifying certain Persona offerings in fields that directly overlapped with Plaintiff's services, including nutritional counseling and weight loss-specific and bariatric offerings. For example:

(i) According to a press release issued in September 2020, since being acquired by Nestlé, "Persona added more than 100 new employees, including nutritionists, **to bolster its**

---

[23] Ex. M.

**nutritionist-by-appointment offering**."[24]

(ii) Persona announced in late June 2020 that it had brought on a bariatric surgeon to provide "guidance on personalized vitamin and supplement recommendations" to bariatric patients.[25] It subsequently launched two new bariatric offerings. *See* ¶ 88.

(iii) Persona launched a new weight loss supplement on Amazon starting September 10, 2020.[26] "**Start Your Weight Loss Journey with Persona**" stated the accompanying slogan. It actively targets consumers looking for weight loss products. *See* ¶¶ 75-76, 88-89.

65. *Second*, even if Defendants were not actually offering customized advice and recommendations by doctors, their marketing and messaging implied that each consumer's responses to the assessment were being personally reviewed *by doctors*, and their recommendations for vitamins and supplements given *by doctors*. For example:

(i) By February of 2020, its homepage stated, "Our experts cut through the hype and confusion with **doctor-approved** recommendations," when prompting visitors to take its online assessment.[27]

(ii) By June of 2020, the homepage stated "**Doctor-approved** vitamins and supplements **just for you**."[28] The page where consumers start the health assessment urged visitors to "**Get one-on-one health advice**" in large, bold font.[29]

(iii) Recently, Plaintiff learned the image below has been shown to consumers who complete the assessment, which even further underscores that doctors are personally reviewing each consumer's answers to create the personalized vitamin pack:

[24] Ex. P (emphasis added).
[25] Ex. Q.
[26] Ex. R.
[27] Ex. S (emphasis added).
[28] Ex. T, p. 2 (emphasis added).
[29] DE 1-6 at 3.




66. *Third*, Defendants generally increased the use of the term "doctor(s)" throughout Persona marketing, and increasingly marketed Persona as a medical or healthcare service. For example:

(i) An online video advertisement for Persona starts with the words, "Is your health important for you?" while prompting the viewer to "Take Our Free **Health Assessment**." Discussing Persona, an actor explains "they **prescribe** everything for what you need" implying that prescriptions are among Persona's offerings.[30]

(ii) SPN's descriptions of the Persona service play up the customized advice and healthcare aspects of the service. "To receive **advice unique to their own health needs**, users can receive **doctor-approved** recommendations and access **online advice** from nutritionists." This description of Persona appears below the heading "Enhancing Bio**medical** science."[31]

---

[30] A persistent link to the ad was available at: https://www.facebook.com/ads/library/?id=800785653894332 at the time Plaintiff filed its original complaint. It has since appeared to have been removed. A screenshot of that page is filed as DE 1-7. The advertisement had been running on Facebook, Instagram, and other platforms since May 20, 2021. The ad can still be seen at this website that collects television commercials: ISPOT.TV, https://www.ispot.tv/ad/tCdu/persona-nutrition-real-customers-real-reviews (last visited Oct. 2, 2021).

[31] Ex. U (emphasis added).

SPN has admitted that it "operates and maintains" this website. DE 39 at 3.

(iii) On April 29, 2021, Defendants' Persona-branded YouTube channel featured a man wearing a whitecoat in a doctor's office surrounded by medical equipment, identified as Dr. Harry Oken – Persona Medical Advisory Board Member, in a posting where "Dr. Harry Oken talks about the three available COVID-19 vaccines, possible side effects, and how to prepare for the second dose. Drop a question below about the COVID-19 vaccine, personalized nutrition, and all things supplements!"[32]

(iv) The phrases "**doctor-approved**" and "**doctor-designed**" have generally proliferated through Persona marketing.[33] A new company tagline is "Loved by Nutritionists. **Approved by Doctors**."[34]

(v) Persona's weight loss and bariatric offerings on Amazon include "Doctor-Designed" and "Dr.-Recommended," respectively, in the product titles. "**Persona Weight Loss** Premium Daily Vitamin Packs | **Doctor-Designed** Nutrient Blends to Support Weight Loss," says the title to the weight loss product on Amazon.[35]

(vi) The Persona "bariatric" page[36] features the image below –

---

[32] *See* Dr. Harry Oken, YouTube (April 29, 2021), https://www.youtube.com/watch?v=JVm5rImHV9s.

[33] *See, e.g.*, Ex. R ("Doctor-Designed"); Ex. S ("doctor-approved"); Ex. V ("doctor-approved recommendations"); DE 1-8 ("Doctor-Designed" used in the "Mailer"); Persona Nutrition, Persona Nutrition: Box Over The Bottles, VIMEO, at 00:26 (approx. June 10, 2021), https://vimeo.com/560850405 ("They're doctor-approved!").

[34] Ex. T, p. 2 (emphasis added). This tagline shows up on the Persona home page for the first time between January 10, 2021 and January 19, 2021, as seen in captures on the Internet Archive's WayBack Machine. *Compare* PERSONA NUTRITION, https://web.archive.org/web/20210110043158/https://www.personanutrition.com/ (Jan. 10, 2021) *with* PERSONA NUTRITION, https://web.archive.org/web/20210119073947/https://www.personanutrition.com/(Jan. 19, 2021).

[35] Ex. R.

[36] *See* Persona, www.personanutrition.com/products/bariatric-vitamins (last visited Oct. 2, 2021).




67. Each of these steps increase the likelihood that consumers will confuse Persona with PersonaDoctors, or that they will see the parties' offerings as related, as coming from the same source, or as coming from sources affiliated or associated with one another.

68. Defendants also frequently tout that their services include an assessment to screen for potential interactions with prescription medications, as something that distinguishes them from other vitamin companies.[37] Plaintiff also offers drug interaction analysis as part of its health assessment.[38]

69. On March 1, 2021, Plaintiff's counsel and SPN's counsel spoke by telephone about Plaintiff's continuing trademark infringement concerns and whether the parties could reach a resolution. *That same day*, SPN's counsel filed two more trademark applications for Persona, intruding further on Plaintiff's rights.[39] One of the new applications covered a mobile app "for

---

[37] *E.g.*, Exs. B, C, N.
[38] *See, e.g.*, Ex. L.
[39] U.S. Trademark Application Serial No. 90/553,429 (filed March 1, 2021); U.S. Trademark Application Serial No. 90/553,289 (filed March 1, 2021).

providing customized recommendations for vitamins and nutritional supplements based on a user's unique wellness goals."[40] Thus, instead of merely covering vitamins and supplements, like its prior (rejected) applications, this application encroached even closer to Plaintiff's services characterized by customized advice. Further, that application sought protection for the word "Persona" alone, without the "fingerprint" design that Defendants had previously claimed would help distinguish the parties' marks.

**<u>The Likelihood of Confusion Between the Parties' Marks</u>**

70. Several factors support a likelihood of confusion arising from the parties' use of their respective Persona and PersonaDoctors' marks.

71. Persona and PersonaDoctors are highly similar on their face. On information and belief, Defendants increasingly used the Persona mark without the fingerprint design element as part of the mark. They have filed and attempted to prosecute at least five trademark applications for the Persona mark alone, without such design. Use of the compound phrase "Persona Nutrition," once more common, has also become less frequent and less prominent in favor of displaying Persona alone. In addition, the frequent references to "doctors" in the Persona marketing raises the likelihood of confusion with Persona*Doctors*.

72. Even with the "fingerprint" design that Defendants claim distinguishes the parties' marks, the marks are still confusingly similar. This design is not sufficient to dispel the likelihood of consumer of confusion – as the PTO pointed out to VitaminPacks and to SPN.[41]

73. The parties use their respective marks in connection with multiple goods and services that are overlapping, similar, or related. Directly overlapping offerings include vitamins and supplements, nutritional counseling, and health assessments, including drug interaction analysis. And

[40] U.S. Trademark Application Serial No. 90/553,429 (filed March 1, 2021).
[41] Ex. M. The PTO sent the first non-final office action to VitaminPacks, while the PTO sent the final office action to SPN, and both times the PTO found the marks confusingly similar.

each offer goods and services to support weight loss and anti-aging. Further, Defendants' offerings are "related" to Plaintiff's other goods and services for purposes of a likelihood of confusion analysis.

74. Persona-branded goods and services are sold and rendered through channels of trade (or facilities) that overlap in nature with Plaintiff's, including online, over the phone, and through the mail.

75. The Persona business and the PersonaDoctors business use overlapping advertising channels, namely television advertising (including in the D.C., Maryland, Virginia area), Facebook, Google Ads, and other online channels. For Defendants, these online channels include domains that redirect customers to personanutrition.com. For example, the domain persona**weightloss**.com redirects to Defendants' website. A search online for "persona weight loss" is one of the top queries used to find Plaintiff's business.

76. As another example, the domain persona**fatburners**.com redirects to personanutrition.com. But it is Plaintiff – not Defendants – that offer goods called "fat burners." Defendants seem intent on using online channels to capture traffic that may be headed to Plaintiff's business.

77. Advertising similarities do not stop there. Both businesses often employ a blue-and-white dominant color scheme in their marketing and packaging. Both use frequent references to doctors and medical imagery.

78. Defendants are now targeting customers in the geographic region where Plaintiff operates. On or around May 7, 2021, Plaintiff's Executive Director received an unsolicited direct-to-consumer, Persona-branded advertisement through the mail at his home in Rockville, Maryland in this District (the "**Mailer**"). The Mailer prominently featured the Persona mark and the slogan: "**Designed by doctors. Just for you.**" "FREE EXPERT ADVICE," it read, "Persona customers get

one-on-one coaching from our qualified nutritionists, 7 days a week."[42]

79. Defendants' Mailer utilized the United States Postal Service's Informed Delivery® integrated mail and digital marketing campaign services to generate additional consumer impressions, interactions, and insights regarding consumers, including consumers in this state. The integrated advertisement in the May 7, 2021 Informed Delivery unsolicited email sent to Plaintiff's Executive Director included Defendants' promotional discount offer, and it was identified as coming "FROM Persona."

80. On information and belief, Defendants have sent mailers like the above to consumers in the greater D.C., Maryland, and Virginia region where PersonaDoctors has a large customer base. In fact, in July of 2021, Plaintiff's Executive Director received a second direct-to-consumer mailing from Persona at his residence, along with another Informed Delivery email advertisement, both unsolicited. In addition, a family member of Plaintiff's Executive Director received a postcard advertising Persona to her residence in Silver Spring, Maryland.

81. Defendants also purchased television advertising spots in this market to target consumers in this area.

82. Defendants' actions have led to actual confusion during the past several months. On at least two separate occasions, customers asked one of Plaintiff's clinic managers about Persona Nutrition, after indicating they had seen local advertisements for Persona Nutrition.

83. On another occasion, a customer inquired to Plaintiff's clinic manager about a one-on-one nutritionist counseling service offered by Defendants.

84. In April of 2021, a prospective customer of PersonaDoctors signed up for services, and then asked to redeem a promotional discount offered by Persona Nutrition. She decided not to complete the new patient intake procedures shortly after learning that the promotion was not

[42] A copy of the Mailer has been filed as DE 1-8.

redeemable at PersonaDoctors. Such instances of confusion further underscore the increasing risk and damage to Plaintiff arising from Defendants' continued use of the Persona mark.

85. Defendants' offerings are also not the same quality as Plaintiff's, in particular with respect to the role of doctors. Plaintiff offers medically-supervised therapies that are truly customized to an individual by a doctor, with the doctor taking into account the individual's medical conditions, medical history, and existing prescriptions, and offering recommendations based on the results of medical tests conducted on that patient. Defendants advertise that that their offerings are "doctor-designed" for each individual, and offered pursuant to a health assessment. In reality, the involvement of doctors is much further removed from the individual, and significantly limited. Doctors may be consulted on the general algorithm used as part of Defendants' health assessment, but a doctor does not offer individually-tailored recommendations or review the customer's input in the health assessment. Nor does a doctor "approve" or "design" treatments for each customer.

**Defendants' Bad Faith**

86. While bad faith is not required for Plaintiff to prevail on its claims, in this case, there is already substantial indicia of Defendants' bad faith making this an exceptional case.

87. In its June 2020 letter, VitaminPacks had identified several distinctions and differences between the parties and their goods and services that mitigated the likelihood of confusion. Specifically, VitaminPacks had insisted in the June 2020 letter that confusion was unlikely in part because of differences between the parties' respective goods and services. "...PersonaDoctors operates a bariatric medical practice... PERSONA does not focus on bariatric goods or services....R80 focuses on weight loss and anti-aging treatments; VP's products more broadly address a fuller range of nutritional needs." VP Ltr. pp. 4, 6-7.

88. *Exactly three weeks later*, "Persona" announced that Dr. Philip Schauer, a bariatric surgeon, would "join its team of medical professionals" and "provide guidance on personalized

vitamin and supplement recommendations for those who have undergone bariatric procedures."[43] Ex. Q. By August 5, 2020, a new, prepackaged "Persona Bariatric" vitamin pack was available on Amazon, advertised as "Dr. Recommended."[44] And on November 11, 2020, Persona launched a new customized supplement offering for bariatric patients.[45] It now devotes a page of its website to its bariatric products.[46]

89. Persona has also emphasized weight loss offerings, and targeted customers looking for weight loss products. A new Persona-branded weight loss supplement has been available for sale on Amazon since September 10, 2020. According to the Persona website, "Do you have supplements to support weight loss?" is now one of the most frequent questions it receives.[47]

90. In its June 2020 letter, VitaminPacks had insisted that "No PERSONA products are prescription medications. PERSONA does not offer medical evaluations or medical advice." VP Ltr. p. 4. Thereafter, Persona advertising suggested that they "**prescribe** everything for what you need." *See* ¶ 66(i).

91. In its June 2020 letter, VitaminPacks had claimed "PERSONA™ vitamins and supplements can only be purchased from its online store, and are not available from any other online store, nor in any brick and mortar retail store." VP Ltr. p. 5. Mere weeks later, Persona products were for sale on Amazon.com. As for brick-and-mortar retail, Plaintiff has since learned that when VitaminPacks made that representation, Defendants had already signed an agreement with XpresSpa to sell Persona supplements in its brick-and-mortar locations across the U.S.[48]

92. In its June 2020 letter, VitaminPacks had also pointed to distinctions between the

---

[43] Ex. Q.
[44] Ex. V.
[45] Ex. W.
[46] *See* Persona, www.personanutrition.com/products/bariatric-vitamins (last visited Oct. 2, 2021).
[47] Ex. X.
[48] Ex. Y. This exhibit consists of a relevant excerpt of an SEC filing by XpresSpa describing this relationship.

parties' marks, including the "Doctors" portion of Plaintiff's mark. VP Ltr. p. 6. Defendants then increasingly emphasized the word "doctor(s)," including in a new tagline, on their websites, and elsewhere.

93. In its June 2020 letter, VitaminPacks had pointed to differences in geographic focus. Persona was generally available nationwide, it said, while "[Plaintiff]'s PersonaDoctors medical services are likely unknown to people outside of Washington D.C. and a few neighborhoods of southern Maryland and northern Virginia. These and other factors readily differentiate our clients...." VP Ltr. p. 7.

94. Defendants subsequently targeted their Persona advertising directly at the very same "neighborhoods of southern Maryland and northern Virginia" where VitaminPacks itself had described Plaintiff's customer base – delivering mailers directly to the doorsteps of Plaintiff's Executive Director and his family, and airing TV commercials in that market.

95. Thus, not only did Defendants continue to use the infringing mark after being notified of Plaintiff's rights and infringement concerns, but they have taken affirmative steps to worsen the likelihood of confusion over time.

**DEFENDANTS' AGENCY RELATIONSHIP AND LACK OF CORPORATE FORMALITIES**

96. Since Plaintiff filed its original complaint, SPN – the owner of the infringing mark – has challenged whether this Court has personal jurisdiction over it. Among other contacts described above, personal jurisdiction exists due to Defendants' agency relationship and failure to observe corporate formalities.

97. The U.S.-based defendants, VitaminPacks and NHN, act as agents of SPN, who is their ultimate corporate parent and the current owner of the Persona mark and domain.

98. Defendants use the name "Persona" ambiguously, equating it to different corporate entities, depending on the context.

99. As referenced above, the "Terms of Use" and "Terms of Sale" on personanutrition.com create a binding contract with SPN, while the "Refer a Friend" Terms define "Persona" as VitaminPacks. Elsewhere, "Persona" is equated with, or described as belonging to, "Nestle Health Science." Some Nestle Health Science press releases refer to "**Persona™, a Nestlé Health Science (NHSc) company**...."[49] Other Nestle Health Science press releases refer to "PersonaTM" or "Persona Nutrition®" as "brands" of "Nestle Health Science" despite the fact that the Persona mark is supposedly owned by SPN.

100. VitaminPacks and SPN do not maintain separate records when it comes to the Persona business and trademark rights, and they otherwise routinely disregard corporate formalities when it comes to the Persona mark. This is demonstrated in their representations to the PTO.

101. VitaminPacks filed five applications for the PERSONA mark (either in standard character form or with a design element) in May of 2018 and July of 2019. Some of these were based on current use in commerce, others were "intent to use" applications under Section 1(b) of the Lanham Act.

102. According to Jacqueline Donaldson, SPN's declarant in support of its recent motion to dismiss and its "General Counsel for Zone Americas," SPN acquired ownership of the Persona mark from VitaminPacks in **June 2020**. DE 50-2 at ¶ 7 ("SPN acquired its ownership of the PERSONA Marks from Defendant Vitaminpacks, Inc. ('VPI') via a duly executed Intellectual Property Sales Assignment in **June 2020**.") (emphasis added).

103. On August 11, 2020, notwithstanding SPN's declaration stating that SPN owned the

---

[49] *See, e.g.*, Ex. B; *Persona Launches New Gummy Vitamin Packs for the Entire Family* (Apr. 14, 2021), https://www.nestlehealthscience.com/newsroom/press-releases/persona-launches-new-gummy; *Nestlé completes acquisition of The Bountiful Company core brands* (Aug. 9. 2021), www.nestlehealthscience.com/newsroom/press-releases/nestle-completes-acquisition-of-the-bountiful-company-core-brands ("Nestlé Heath Science's other vitamins, minerals and supplements brands include... Persona Nutrition®...").

Persona mark by this time, *VitaminPacks* filed yet another trademark application for the mark in its own name. (U.S. Serial No. 90107044). VitaminPacks also submitted with its August 11, 2020 application a signed declaration under penalty of perjury that no other entity, to its knowledge, had the right to use the applied-for mark.

104. On November 18, 2020, SPN recorded an assignment with the PTO, that by its terms purported to be the instrument assigning the Persona mark, including all pending applications, to SPN. Contrary Ms. Donaldson's declaration testimony, that instrument was executed on **October 30, 2020** – not in June of 2020.[50] The instrument did not refer to an earlier assignment that was being confirmed,[51] but was by its terms the instrument of conveyance. The instrument identified VitaminPacks as the owner of the Trademarks being assigned, SPN as the party that "***seeks to*** acquire all right, title and interest in and to the Trademarks," and stated: "**Now**, in consideration of the preceding paragraphs, which are incorporated by this reference, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, **Assignor assigns to Assignee** all of its right, title and interest in and to the Trademarks, and all associated common law rights and goodwill associated with the Trademarks."[52]

105. During the summer and fall of 2020, the PTO issued initial office actions refusing registration of five of the pending Persona applications on grounds of a likelihood of confusion. Consistent with PTO rules, only the owner of the applications or its attorney acting on its behalf may respond to such refusals. On November 12, 2020, despite that the mark and applications had purportedly been assigned to SPN in June of 2020, or at least by October 30, 2020, *VitaminPacks*

---

[50] Ex. Z shows a copy of this assignment from the PTO's online files.
[51] The PTO allows parties to record a "confirmatory assignment," or a short-form document for purposes of recordation which attests to an assignment that has already taken place. But this was not a confirmatory assignment. The cover page did not identify it as such, and the underlying, filed agreement was by its terms the instrument of conveyance.
[52] Ex. Z (emphasis added).

responded to one of the office actions (U.S. Serial No. 88546526), identifying itself again as the owner of the trademark at that time.

106. Other PTO filings, even after the assignment was recorded, continued to conflate and confuse the identity of the owner of the Persona mark. For example, after the assignment was recorded at the PTO by SPN, VitaminPacks identified SPN as the owner of the trademark on the coversheet on the response form,[53] but then identified VitaminPacks itself as the applicant and owner of the trademark in the substantive response.[54]

107. Defendants have made several other inconsistent and self-serving representations with respect to the Persona mark and business. Most critically, SPN's representations made to this Court about its lack of involvement with the U.S. business are contradicted by the language in the assignment it recorded with the PTO.[55] That assignment stated that SPN "**is the successor to that portion of the business of the Assignor [i.e., VitaminPacks] to which the Trademarks pertain**."

108. This statement attests to the satisfaction of a statutory requirement for assignment of trademark applications filed on an intent-to-use basis. Specifically, the Lanham Act provides that "[N]o application to register a mark under section 1051(b) of this title [i.e., an intent-to-use application] shall be assignable prior to the filing of" an amendment to allege use or a verified statement of use "except for an assignment **to a successor to the business of the applicant, or**

[53] *See, e.g.,* "Response to Office Action," U.S. Serial No. 88546510 (Nov. 30, 2020) https://tsdr.uspto.gov/documentviewer?caseId=sn88546510&docId=ROA20201130182944#docIndex=6&page=1 (copy and paste foregoing link into browser to access).

[54] The attachment is available from a link referenced in the "form" document in the foregoing footnote. A direct link to the attachment is also available here: https://tsdrsec.uspto.gov/ts/cd/pdfs?f=/ROA/2020/11/30/20201130030407018015-88546510-002_001/evi_505311914-20201130025821969420_._88546510_OA_Response_Nov_29_2020.pdf. This link is provided only to show that VitaminPacks was identified as applicant, and not because Plaintiff incorporates, approves, or alleges any of the purported facts in the response.

[55] Ex. Z. The assignment was executed by VitaminPacks, but it was filed with the PTO by SPN's attorney (from Holland & Hart, identified on the cover page).

**portion thereof, to which the mark pertains**, if that business is ongoing and existing." 15 U.S.C. § 1060(a)(1) (emphasis added). Sometimes called the "anti-trafficking rule," this provision sets forth a meaningful, substantive requirement that Congress enacted in 1989 for the purpose of preventing trafficking in trademark applications.

109. Without being the successor to the business under the marks, SPN would be unable to reap the benefits of owning the pending applications, and to otherwise step into VitaminPacks' shoes with respect to the rights represented in the assignment.

110. SPN also held itself out as being responsible for the Persona business in correspondence with Plaintiff. In a settlement letter dated April 12, 2021, SPN's counsel represented the vitamins and supplements sold under the Persona mark as *SPN*'s products, and Persona marketing as *SPN*'s marketing. SPN has demonstrated its bad faith, by representing on the one hand to Plaintiff and to the PTO that SPN is the successor to that ongoing and existing business pertaining to the Persona mark, and that SPN does control the business decisions relating to the use of the Persona mark in the U.S., while on the other hand claiming it does not conduct any such activities in its recently-filed motion.

111. SPN exerts control over the Persona business. For example, the agreement with ChromaDex imposes numerous conditions and restrictions on the marketing, manufacturing, and sale of the supplement developed under it, which SPN must in turn impose on VitaminPacks.

112. Other indicia of the agency relationship among Defendants include the manner in which revenue from the Persona business is accounted. In financial results and reports available at https://www.nestle.com/investors, Persona revenue is attributed or credited to "Nestle Health Science."[56] "Nestle Health Science" is not a defined corporate entity, but is instead a business "segment." Thus, upon information and belief, the revenues from the Persona business do not stay

[56] *See, e.g.*, Ex. AA, p. 6 (showing press release setting forth these revenues from www.nestle.com).

with VitaminPacks, or with NHN, but flow to their parent companies.

113. Defendants have at least one overlapping officer or director, namely, Mr. James Pepin. Mr. Pepin is both "President" of SPN, as well as "President" and "General Counsel" of NHN.[57]

114. The same lawyers represent and advise all of the Defendants. These include current counsel of record Mayer Brown, as well as inhouse lawyers, including upon information and belief, Claudio Kuoni, Doug Besman, and Zorita Pop.

**FIRST CAUSE OF ACTION**
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

115. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 114 of this First Amended Complaint as if fully set forth here.

116. Plaintiff owns the inherently distinctive, valid, registered trademark PersonaDoctors.

117. The registration for PersonaDoctors is incontestable within the meaning of the Lanham Act, 15 U.S.C. § 1065, and thus serves as conclusive evidence of the validity of the mark, Plaintiff's ownership thereof, and its exclusive right to use the mark in commerce nationwide.

118. The constructive priority date conferred by Plaintiff's federal registration is March 24, 2014, which is earlier than any use of the Persona mark by any of the Defendants.

119. Defendants VitaminPacks and NHN have used the confusingly similar mark to offer and render services and to sell and ship goods in interstate commerce that overlap with, are similar to, or are related to those identified in the registration for PersonaDoctors. Defendant VitaminPacks is the previous owner of the infringing Persona mark.

120. Defendant SPN has owned the Persona mark since June, October or November of 2020

[57] Mr. Pepin signed an agreement on behalf of SPN, identifying himself as its "President," on February 4, 2020. *See* https://contracts.justia.com/companies/aimmune-therapeutics-inc-5121/contract/94980/. He is then identified himself as "President" and "General Counsel" of NHN in an SEC filing dated September 14, 2020. *See* https://www.sec.gov/Archives/edgar/data/1631650/000119312520245300/d72192dex99a1a.htm, page "A-3" (page 3 of Schedule A).

(*see* ¶¶ 102-106), and it authorizes the use of the mark described above. SPN owns the domain where infringing goods and services are sold and rendered, and it has owned the domain since at least as early as July 2020. It operates and maintains another website, www.nestle.com, that advertises the Persona business, and characterizes it as "Biomedical" in nature. *See* ¶ 66(ii).

121. Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Plaintiff, as to the true source of Defendants' goods and services, and as to the sponsorship or approval of Defendants or Defendants' goods and services by Plaintiff.

122. Additionally, Defendants' actions as described herein are likely to cause confusion, mistake, and deception as to the true source of Plaintiff's services, and to diminish Plaintiff's ability to identify itself as the source of its services, and to build goodwill in its PersonaDoctors mark, resulting in trademark infringement by "reverse" confusion.

123. Defendants are not affiliated or associated with Plaintiff or its services, and Plaintiff does not approve of or sponsor Defendants or Defendants' goods and services.

124. Defendants do not have Plaintiff's authorization or consent to use the Persona mark, or any mark confusingly similar to the PersonaDoctors mark.

125. Defendants' actions are willful and reflect an intent to confuse consumers and trade on the goodwill and consumer recognition associated with Plaintiff and the PersonaDoctors mark, as well as a knowing and reckless disregard for Plaintiff's rights in the mark.

126. Defendants intentionally used a mark confusingly similar to the PersonaDoctors mark in commerce in connection with the sale and offering for sale of Defendants' goods and services, knowing that such use was likely to cause confusion, or to cause mistake, or to deceive.

127. The actions of Defendants described above constitute trademark infringement in violation of 15 U.S.C. § 1114.

128. Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill of the PersonaDoctors mark is difficult to ascertain with specificity. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

129. Defendants' infringement of the registered PersonaDoctors mark is deliberate, willful, fraudulent, and without extenuating circumstances, and constitutes a knowing use of a mark confusingly similar to Plaintiff's registered trademark. Defendants' infringement is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff is therefore entitled to recover three times the amount of its actual damages and Defendants' profits, and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## SECOND CAUSE OF ACTION
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

130. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 129 of this First Amended Complaint as if fully set forth here.

131. Plaintiff owns and uses the inherently distinctive and valid PersonaDoctors mark in interstate commerce. Plaintiff, including through its predecessors-in-interest, commenced use of the PersonaDoctors mark in 2014, prior to any first use of the infringing Persona mark.

132. Plaintiff's priority based on its use in commerce includes, but is not limited to, use of the mark in connection with ingestible vitamins and supplements, nutritional counseling, and health assessments.

133. To the extent that the Persona Doctors mark (with a space) is found to be a distinct trademark from PersonaDoctors, Plaintiff also owns and uses the Persona Doctors mark in interstate commerce in connection with the same goods and services, and such mark is also inherently

distinctive and valid.

134. Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception among ordinary consumers as to the affiliation, connection, or association of Defendants with Plaintiff and as to the true source of Defendants' goods or services, and as to the sponsorship or approval of Defendants or Defendants' goods and services by Plaintiff.

135. Additionally, Defendants' actions as described herein are likely to cause confusion, mistake, and deception as to the true source of Plaintiff's services, and to diminish Plaintiff's ability to identify itself as the source of its services, and to build goodwill in its PersonaDoctors mark, resulting in "reverse" confusion among consumers and potential consumers of Plaintiff's services.

136. Defendants' actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

137. Defendants' actions are willful and reflect an intent to confuse consumers and trade on the goodwill and consumer recognition associated with Plaintiff and Plaintiff's mark, as well as a knowing and reckless disregard for Plaintiff's rights in the mark.

138. Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law in that the amount of harm to Plaintiff's business and reputation and the diminution of the goodwill embodied in its trademark is difficult to ascertain with specificity. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

139. Defendants' unfair competition and false designation of origin are deliberate, willful, fraudulent, and without extenuating circumstances. Defendants' conduct is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff is therefore entitled to recover three times the amount of its actual damages and Defendants' profits, and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## THIRD CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

140. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 139 of this First Amended Complaint as if fully set forth here.

141. Plaintiff owns and uses the PersonaDoctors mark in U.S. commerce and within the State of Maryland, and the use of the PersonaDoctors mark predates any use of the infringing Persona mark. To the extent that the Persona Doctors mark is found to be a distinct trademark from PersonaDoctors, Plaintiff also owns and uses the Persona Doctors mark in U.S. commerce and within the State of Maryland, and the use of the Persona Doctors mark predates any use of the infringing Persona mark.

142. Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception among ordinary consumers as to the affiliation, connection, or association of Defendants with Plaintiff and as to the true source of Defendants' goods or services, and as to the sponsorship or approval of Defendants or Defendants' goods and services by Plaintiff.

143. Additionally, Defendants' actions as described herein are likely to cause confusion, mistake, and deception as to the true source of Plaintiff's services, and to diminish Plaintiff's ability to identify itself as the source of its services, and to build goodwill in its PersonaDoctors (and Persona Doctors) mark, resulting in "reverse" confusion among consumers and potential consumers of Plaintiff's services.

144. Defendants' unlawful activities constitute unfair competition and trademark infringement as proscribed by common law.

145. Defendants' acts of unfair competition and trademark infringement are committed maliciously and wantonly, and with knowing and reckless disregard of Plaintiff's trademark rights. For example, Defendants have persisted in the use of their infringing trademark, and have encroached further on Plaintiff's rights, even after the PTO made final its refusals to register most of Defendants'

applications for the Persona mark due to the likelihood of confusion with Plaintiff's mark.

146. Around three weeks after receiving the PTO's final office actions, Defendant SPN filed two more applications for the Persona mark, including in connection with goods that came even closer to Plaintiff's services than those in the already-denied applications.

147. Moreover, since receiving such office actions, Defendants have recently targeted consumers in the exact geographic market where Defendants know Plaintiff's business is focused, including through direct-to-consumer mail and television advertising. They have not only targeted such consumers using the infringing Persona mark, but they have also used marketing messages like the "Designed by Doctors" slogan, that increase confusion with PersonaDoctors.

148. Such conduct demonstrates a wanton disregard for, and maliciousness towards, Plaintiff and its rights in the PersonaDoctors mark.

149. Plaintiff is entitled to compensatory and punitive damages under Maryland common law for Defendants' actions alleged herein.

## FOURTH CAUSE OF ACTION
### VICARIOUS INFRINGEMENT

150. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 149 of this First Amended Complaint as if fully set forth here.

151. Defendants SPN, NHN, and VitaminPacks have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing goods and services. Accordingly, to the extent that Defendants NHN and SPN are not directly liable for trademark infringement, they remain vicariously liable for the infringement of VitaminPacks. Or, if NHN and/or VitaminPacks are directly liable for infringement, then SPN is vicariously liable.

152. Defendants' infringement of the registered PersonaDoctors mark is deliberate, willful, fraudulent, and without extenuating circumstances, and constitutes a knowing use of a mark

confusingly similar to Plaintiff's registered trademark. Defendants' unfair competition and false designation of origin are also deliberate, willful, fraudulent, and without extenuating circumstances. Defendants' infringement is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff is therefore entitled to recover three times the amount of its actual damages and Defendants' profits, and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

**(a)** That Plaintiff be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051 *et seq*., specifically, that Defendants and all of their officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert or participation with them, be permanently enjoined from: (i) using any trademark incorporating the term "persona," or any similar variations thereof, whether in standard character form or with stylization or design, in connection with the marketing, promotion, advertising, sale, or rendering of any of Defendants' goods or services in the U.S.; (ii) using any false designation of origin or any false description that can, or is likely to, mislead the public, or individual members thereof, to believe that any good or service distributed, sold, offered for sale, or advertised by Defendants is in any manner associated with or approved or sponsored by Plaintiff (or vice versa); (iii) representing in any manner that Defendants are endorsed or sponsored by Plaintiff, or represent or work on behalf of Plaintiff, or are affiliated or associated with Plaintiff (or vice versa); and (iv) undertaking any other infringing or misleading conduct discovered during the course of this action;

**(b)** That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying: (i) the manner in which Defendants have

complied with the terms of the injunction; (ii) that Defendants have removed, destroyed, or caused to be removed or destroyed, all marketing or promotional materials or packaging for Defendants' goods or services that features the term "persona" or otherwise violates (a) above; and (iii) that Defendants, to the extent applicable, have written all of their affiliates, licensees, and agents (including but not limited to brand influencers and spokespersons) requesting that they cease use or refrain from using the term "persona" in connection with Defendants' goods and services;

**(c)** That Defendants are adjudged to have violated 15 U.S.C. § 1114 by infringing the registered PersonaDoctors mark;

**(d)** That Defendants are adjudged to have violated 15 U.S.C. § 1125(a) by infringing common law trademark rights in the PersonaDoctors mark and unfairly competing against Plaintiff by using a false designation of origin for Defendants' goods and services;

**(e)** That this Court order Defendants to expressly abandon all pending U.S. applications for the Persona mark, and any issued registrations for the Persona mark, whether in standard character, stylized, or design form, and permanently refrain from seeking registration of any mark containing the word "persona" or any other trademark confusingly similar to Plaintiff's mark; and that the Court decree that Defendants have no right to registration of the Persona mark and order the Director of the United States Patent and Trademark Office to cancel any registrations for the Persona mark owned by any of the Defendants, under 15 U.S.C. § 1119;

**(f)** That Plaintiff be awarded damages in an amount sufficient to compensate it for damage caused by Defendants' acts;

**(g)** That this Court order an accounting of Defendants' profits related to Defendants' unlawful activities and award all of said profits to Plaintiff;

**(h)** That Plaintiff be awarded three times Defendants' profits and three times Plaintiff's damages suffered as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

**(i)** That Plaintiff be awarded its attorneys' fees and costs in this action under 15 U.S.C. § 1117 as a result of Defendants' Lanham Act violations;

**(j)** That Plaintiff be awarded all other remedies available under the Lanham Act, including, but not limited to, corrective advertising;

**(k)** That Plaintiff be awarded punitive damages under Maryland common law in an amount to be determined by the Court;

**(l)** That Plaintiff be granted prejudgment and post judgment interest; and

**(m)** That Plaintiff be granted such further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby respectfully demands a trial by jury of all issues triable of right by a jury.

Dated: October 4, 2021

Respectfully submitted,

/s/ *Brendan J. Hughes*

Brendan J. Hughes (Bar No. 17042)
Rebecca Givner-Forbes (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave NW, Suite 700
Washington, DC 20004
Tel: (202) 842-7800
Fax: (202) 842-7899
Email: bhughes@cooley.com
rgf@cooley.com

John Paul Oleksiuk (*pro hac vice*)
Colette Ghazarian (*pro hac vice*)
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel: (310) 883-6400
Fax: (310) 883-6500
Email: jpo@cooley.com
cghazarian@cooley.com

*Counsel for Plaintiff R80 LLC*

255562473 v3